ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT WORTH DIVISION

2012 OCT 25 PM 12: 26

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Fort Worth Division

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* [UNDER SEAL] *Plaintiff*, v. [UNDER SEAL] [UNDER SEAL] [UNDER SEAL] [UNDER SEAL] *Defendants.* | **4-12CV-757-A** Case No. 0:00-cv-00000 **Complaint for Violations of the Federal False Claims Act 31 U.S.C. §§ 3729 et seq.** **FILED UNDER SEAL** **Jury Trial Demanded** |

CONFIDENTIAL AND UNDER SEAL—*QUI TAM* COMPLAINT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
*Fort Worth Division*

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*<br>DARILYN JOHNSON<br><br>    *Plaintiff,*<br><br>v.<br><br>KANER MEDICAL GROUP, PA,<br>DAVID KANER,<br>OTTO GAMBINI, AND<br>JUDITH KUTLER<br><br>    *Defendants.* | Case No. 0:00-cv-00000<br><br>**Complaint for Violations of the Federal False Claims Act 31 U.S.C. §§ 3729 et seq.**<br><br>**FILED UNDER SEAL**<br><br>**Jury Trial Demanded** |

# INTRODUCTION

1. Qui tam relator Darilyn Johnson ("Johnson" or "Relator"), by her attorneys, individually and on behalf of the United States of America, files this complaint against Defendants Kaner Medical Group, PA ("KMG"), David Kaner ("Kaner"), Otto Gambini ("Gambini"), and Judith Kutler ("Kutler") (collectively, "Defendants") to recover damages, penalties, and attorneys' fees for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 et seq., ("FCA" or "False Claims Act"). Johnson also seeks damages and attorneys' fees for unlawful retaliation in violation of 31 U.S.C § 3730(h).

2. The violations of the False Claims Act arise from Defendants' fraudulent claims on the Centers for Medicare and Medicaid Services ("CMS"), and the Federal Medicare program.

3. Under controlling law and regulations, healthcare providers are able to seek reimbursement from Medicare for the services they provide patients covered by the service.

4. With actual knowledge and/or deliberate indifference and/or reckless disregard for the truth, Defendants repeatedly made it common practice to allow certain staff to practice medicine without a license, and held those staff out to be licensed to practice medicine.

5. With actual knowledge and/or deliberate indifference and/or reckless disregard for the truth, Defendants repeatedly made it common practice to require all patients covered by Medicare to undergo allergy testing.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 31 U.S.C. §§ 3732(a). Johnson's federal cause of action for unlawful retaliation is authorized by 31 U.S.C. § 3730(h).

7. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants are headquartered in this judicial district.

8. Venue is proper in this Court under 28 U.S.C. §§ 1391(c) and 1395(a), because the complained of illegal acts occurred within this judicial district.

## THE PARTIES

9. Relator Johnson is a citizen of the United States and a resident of Fort Worth, Texas.

10. Johnson worked for KMG as a patient financial counselor from April 9 until June 26, 2012.

11. Johnson was in a position to see most of KMG's patients, and regularly reviewed patient insurance and medical records in the course of her job duties.

12. Defendant KMG is a Texas corporation that takes in approximately $2.2 million in annual sales. (See Exhibit 2, KMG Asset Research). KMG may be served by serving David Kaner, 1305 Airport Freeway, Suite 220 & 324, Bedford, Texas 76021.

13. KMG first incorporated in Texas in 1996.

14. KMG provides a range of medical services to its customers, including internal medicine, child/pediatric healthcare, cardiology services, dermatology, physical

therapy/rehabilitation, worker's compensation, family medicine, allergy screenings/therapy, women's healthcare, elder care, diagnostic testing, and pre-employment drug screens/physicals.

15. KMG runs two business locations, a headquarters in Bedford, Texas and another location in Euless, Texas. KMG owns both of these business locations

16. David Kaner is the primary owner of Kaner Medical Group, and is also a medical practitioner at Kaner Medical Group. David Kaner may be served with process by serving him at 1941 Winter Drive, Keller, Texas 76262.

17. Otto Gambini is an employee of Kaner Medical Group who practices in and manages KMG's allergy clinic. Otto Gambini may be served with process by serving him at 1305 Airport Freeway, Suite 220 & 324, Bedford, Texas 76021.

18. Judith Kutler is a 10 percent owner of Kaner Medical Group, a medical practitioner at KMG, and a business partner of David Kaner. Judith Kutler may be served with process by serving her at 1532 Windsor Forest Trail, Keller, Texas 76262.

### FACTUAL ALLEGATIONS

**KMG BILLED MEDICARE FOR SERVICES THAT AN UNLICENSED INDIVIDUAL PROVIDED.**

19. KMG maintains an allergy clinic where it tests and treats patients for allergies.

20. Otto Gambini runs the KMG allergy clinic.

21. KMG pays Gambini based on the number of patients he sees in a day.

22. Gambini sees approximately 30 patients per day.

23. Most days, Gambini starts seeing patients at 7:00am, and stops seeing patients at 5:00pm, seeing a new patient approximately every 15 to 30 minutes.

24. Approximately 60 percent of the patients Gambini sees are Medicare beneficiaries.

25. Other providers within KMG receive a percentage of the fee for each patient they refer to Gambini.

26. As part of his practice, Gambini interprets allergy tests and recommends courses of treatment to patients.

27. Gambini's recommended course of treatment for every patient he sees involves administration of a serum injection or series of serum injections.

28. The earliest Texas Medical Board records of Gambini begin in 2002

29. During her tenure at KMG, Johnson called a patient's insurance company to inquire about the patient's benefits for allergy treatment. On this call, the insurance company asked for Gambini's National Provider Identifier (NPI) number.

30. Johnson could not find a National Provider Identifier (NPI) number for Gambini.

31. When Johnson asked Deborah Patterson, another KMG employee, about Gambini's NPI number, Patterson told Johnson that Gambini did not have a NPI.

32. Patterson told Johnson that Johnson should bill for all of Gambini's services using Dr. David Kaner's NPI.

33. Patterson told Johnson that Kaner's NPI should always be used to bill for Gambini's services because Gambini is not a doctor.

34. After learning that Gambini is not a doctor, Johnson called the medical board of Texas and representative confirmed to her that all providers in Texas must be licensed in Texas.

35. Gambini is not licensed or permitted to practice medicine in Texas in any regard.

36. KMG knows that Gambini is not licensed to practice medicine in Texas.

37. KMG provides Gambini a location and staff to practice medicine.

38. No one at KMG personally supervises the work of Otto Gambini.

39. The internal contact sheet for KMG lists Gambini in a separate section than the physician providers, and does not place the initials M.D. after his name.

40. Gambini interprets allergy test results, designs courses of treatment, and counsels patients one-on-one as to his recommendations for allergy treatments.

41. Gamibini receives payment for his unlicensed medical practice.

42. KMG holds Gambini out as a licensed doctor.

43. No one at KMG informs the patients Gambini sees that Gambini is unlicensed to practice medicine in Texas.

44. KMG's website lists the initials "M.D." following Gambini's name.

45. KMG submitted claims to Medicare for Gambini's unlicensed services.

46. Medicare paid out claims for approximately 60 percent of all Gambini's services.

**KMG BILLS FOR MEDICALLY UNNECESSARY SERVICES**

47. KMG recommends that approximately 80 percent of its patients undergo testing for allergies.

48. Johnson was in a position to view nearly all of the patients who came into KMG.

49. As part of her job duties, Johnson explained patient insurance benefits to patients.

50. As part of her job duties, Johnson reviewed many of KMG patients' medical documents and records.

51. Gambini recommended a course of immunotheraphy injection treatment for nearly every patient that underwent allergy testing.

52. The vast majority of these patients came to KMG for general practitioner care and routine medical check-ups, not for allergy diagnosis and treatment.

53. The other practitioners within KMG referred their patients to Gambini's allergy clinic in exchange for a percentage of the payments for the allergy diagnosis and treatment.

54. Within the general American population, only about one in five individuals suffer from some form of allergy or asthma.

55. Most of allergic conditions do not require immunotherapy (allergy shots).

56. Most individuals who suffer from allergic conditions can manage their conditions through prevention (avoidance of the allergen) or over-the-counter medication.

57. Generally, allergists will only recommend immunotherapy when prevention and over-the-counter medication do not work to manage allergic reactions.

58. Gambini never recommended prevention or over-the-counter medication to his patients; Gambini nearly always prescribed immunotherapy.

59. A significant number of patients were prescribed medically unnecessary immunotherapy treatments.

60. KMG tests approximately 80 percent of all its patients for allergies and recommends immunotherapy for virtually 100 percent of those tested.

61. It is statistically impossible for all of these services to be medically necessary.

62. KMG submitted claims for medically unnecessary services to Medicare for reimbursement.

63. KMG received funds from the federally funded Medicare program in return for submitting claims for medically unnecessary services.

64. KMG charged Medicare about $1,100 for each allergy shot KMG administered.

**KMG REFUSES TO REFUND UNNECESSARILY COLLECTED COPAYS TO PATIENTS**

65. As part of her job duties, Johnson reviewed a financial document called an "aging," which refers to long-term outstanding credit balances.

66. While reviewing an aging, Johnson discovered that KMG charged Medicare patients copays that should not have been charged.

67. KMG owed approximately $60,000 in unnecessarily collected copays to its Medicare patients.

68. Upon discovery that KMG owed its Medicare patients $60,000, Johnson began refunding the unnecessarily collected patient copays.

69. Shortly after Johnson began refunding the unnecessarily collected copays, Jamie Baker, KMG's director of operations, told Johnson to stop refunding the copays.

70. Baker told Johnson that KMG could not afford to refund the unnecessarily collected copays to patients.

71. Baker informed Johnson that KMG would retain these funds until patients called to complain.

72. Very few patients called to complain about the unnecessarily collected copays, so KMG still owes about $60,000 to its Medicare patients.

73. Johnson's colleague Deborah Patterson informed her that KMG kept unnecessarily collected copays because "it looks good to banks."

**KMG TERMINATES RELATOR BECAUSE OF HER QUESTIONS ABOUT KMG'S PRACTICES**

74. During the months that Johnson worked for KMG, she became suspicious the Defendants' practices.

75. On June 18, 2012, Johnson sent Judith Kutler an email describing a number of problems with KMG's billing and accounting practices, including failure to refund unnecessarily collected Medicare copays.

76. On June 26, 2012, Jamie Baker informed Johnson that Judith Kutler wanted to speak with Johnson.

77. When they met, Kutler told Johnson words to the effect of, "I don't want to lose the company behind you."

78. When she said, "I don't want to lose the company behind you," Kutler meant that Johnson's questioning of KMG's illegal business practices was the reason for her termination.

79. On June 26, 2012, the day she was terminated, Johnson was given three "final written notices" of discipline.

80. Johnson had never before received any verbal warnings or disciplinary notices related to the "final written notices."

81. KMG produced the "final written notices" as a pretext to terminating Johnson for questioning KMG's illegal business practices.

## COUNT I

**Defendants Knowingly Presented False or Fraudulent Claims for Payment to the United States in Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)**

82. Johnson incorporates herein by reference and re-alleges the allegations stated in the foregoing paragraphs.

83. Defendants knowingly presented or caused to be presented to the United States, false or fraudulent claims, and knowingly failed to disclose material facts, in order to obtain payment or approval under the federally-funded Medicare program in violation of 31 U.S.C. § 3729(a)(1).

84. The United States, unaware of the falsity of the claims and/or statements made by Defendants and in reliance on the accuracy thereof, paid Defendants for such false or fraudulent claims.

85. By reasons of the acts and conduct of Defendants in violation of 31 U.S.C. § 3729(a)(1), the United States has suffered actual damages, including the amounts paid in response to all such fraudulent claims for payment.

86. By reason of Defendants' failure to properly oversee the use of Medicare funds, the United States Government is and has been paying for unnecessary medical tests and procedures as well as medical tests and procedures that were performed by unlicensed practitioners.

87. The United States is entitled to recover civil money penalties, and other monetary relief as deemed appropriate.

## COUNT II

### Defendants Retaliated Against Johnson for Engaging in Acts Protected by the False Claims Act, 31 U.S.C. § 3730(h)

88. Johnson incorporates herein by reference and re-alleges the allegations stated in the foregoing paragraphs.

89. As set forth above, and in connection with the foregoing scheme, Defendants conspired to get false or fraudulent claims paid or approved by the United States in violation of the False Claims Act.

90. Johnson is an "employee" and defendants KMG and Kaner are "employers" as the terms are defined by the False Claims Act.

91. Johnson was terminated as a result of her voluntarily performing lawful acts to investigate one or more violations of the False Claims Act, including questioning KMG's business

practices and attempting to refund unnecessarily collected Medicare patient copays. At all relevant times, Johnson was engaging in activity protected by the False Claims Act. Defendants, knowing that Johnson was engaging in such activity, terminated her because of her protected conduct.

92. To redress harms she suffered as a result of the acts and conduct of defendants in violation of 31 U.S.C. § 3730(h), Johnson is entitled to damages including two times the amount of back, interest on back pay, and compensation for any special damages, including emotional distress and any other damages available by law including litigation costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Relator Darilyn Johnson, acting on behalf of and in the name of the United States of America and on her own behalf, demands and prays that judgment be entered against the Defendants for violations of the federal False Claims Act Counts as follows:

(a) In favor of the United States against the Defendants for treble the amount of damages to the federal Medicare program from the submission of false claims plus the maximum civil penalties for each violation of the Federal False Claims Act;

(b) In favor of the Relator for the maximum amount pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorney fees and costs incurred by Relator;

(c) For all costs of the federal False Claims Act civil action;

(d) In favor of the Relator for all compensatory and punitive damages, including personal injury damages for pain and suffering and loss of reputation, back pay, and interest, and attorneys' fees and costs to which he is entitle pursuant to 31 U.S.C. § 3730(h)

(e) In favor of the Relator and the United States for further relief as this court deems to be just and equitable;

(f) Such other relief as this Court deems just and appropriate.

Respectfully submitted,

*Richard / Roper* with permission by RBR

Richard B. Roper
State Bar No. 17233700

Jennifer Ecklund
State Bar No. 24045626

THOMPSON & KNIGHT LLP
1722 Routh Street
One Arts Plaza, Suite 1500
Dallas, Texas 75201
Tel. (214) 969-1700
Fax (214) 969-1751


David Scher, *Pro Hac Vice to be filed*
R. Scott Oswald, *Pro Hac Vice to be filed*
*Counsel for the Plaintiff*

The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2803
(202) 261-2835 (facsimile)
dscher@employmentlawgroup.com
soswald@employmentlawgroup.com

ATTORNEYS FOR PLAINTIFF

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Johnson hereby demands a jury trial.

ORIGINAL

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America, ex rel. Darilyn Johnson

**(b)** County of Residence of First Listed Plaintiff  Tarrant
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Richard B. Roper, Thompson & Knight LLP
1722 Routh Street, Suite 1500, Dallas, TX 75201  214/969-1210

## DEFENDANTS
Kaner Medical Group, P.A., David Kaner, Otto Gambini, Judith Kutler

2012 OCT 25 PM 12: 26

County of Residence of First Listed Defendant  Tarrant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

4-12CV-757-A

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 340 Marine | | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** / **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | | | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | |
| ☐ 245 Tort Product Liability | | ☐ 535 Death Penalty | **IMMIGRATION** | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 USC 3729
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE  Oct. 25, 2012
SIGNATURE OF ATTORNEY OF RECORD  Richard Roper with permission by [signature]

**FOR OFFICE USE ONLY**
RECEIPT # FWO18044  AMOUNT $350.00  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____