**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV – 4 2014

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DARILYN JOHNSON, <br><br> *Plaintiff,* <br><br> v. <br><br> KANER MEDICAL GROUP, PA, AND DAVID KANER, <br><br> *Defendants.* | Case No. 4:12-CV-757-A <br><br> **Jury Trial Demanded** |

## SECOND AMENDED COMPLAINT

### INTRODUCTION

1.      Qui tam relator Darilyn Johnson ("Johnson" or "Relator"), by her attorneys, individually and on behalf of the United States of America, files this second amended complaint against Defendants Kaner Medical Group, PA ("KMG") and David Kaner ("Kaner") (collectively, "Defendants") to recover damages, penalties, and attorneys' fees for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA" or "False Claims Act") and for Defendants' unlawful retaliation against Johnson in violation of 31 U.S.C § 3730(h).

2.      The violations of the False Claims Act arise from Defendants' fraudulent claims on the Centers for Medicare and Medicaid Services ("CMS"), TRICARE, part Medicare, and the Federal Medicare program.

3.      Under controlling law and regulations, healthcare providers are able to seek reimbursement from Medicare for the services they provide patients covered by the service.

4.     Under controlling law and regulations, healthcare providers are able to seek reimbursement from TRICARE for the services they provide patients covered by the service.

5.     With actual knowledge and/or deliberate indifference and/or reckless disregard for the truth, Defendants repeatedly made it common practice to bill for services provided by a non-licensed practitioner to patients under the National Provider Identifier (NPI) of a doctor who was not providing direct supervision to that non-licensed provider at the time the service was provided.

6.     With actual knowledge and/or deliberate indifference and/or reckless disregard for the truth, Defendants held a non-licensed practitioner out as a Medical Doctor on their website.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 31 U.S.C. §§ 3732(a). Johnson's federal cause of action for unlawful retaliation is authorized by 31 U.S.C. § 3730(h). Thus, this Court has subject matter jurisdiction over this action.

8.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants are headquartered in and do business in this judicial district, and the actions and inactions of the Defendants at issue in this action occurred in this judicial district.

9.     Venue is proper in this Court under 28 U.S.C. §§ 1391(c) and 1395(a), because the complained of illegal acts occurred within this judicial district.

## THE PARTIES

10.     Johnson is a citizen of the United States of America and a resident of Fort Worth, Texas.

11.     Johnson worked for KMG as a patient financial counselor from on or about April 9, 2012, until on or about June 26, 2012.

12.     By virtue of her employment and job duties at KMG, Johnson was in a position to see most of KMG's patients, and regularly reviewed patient insurance and medical records, and would sometimes meet with the patients to explain their insurance coverage.

13.     KMG is a Texas corporation that takes in approximately $2.2 million in annual sales.

14.     KMG first incorporated in Texas in 1996.

15.     KMG provides a range of medical services to its customers, including internal medicine, child/pediatric healthcare, cardiology services, dermatology, physical therapy/rehabilitation, worker's compensation, family medicine, allergy screenings/therapy, women's healthcare, elder care, diagnostic testing, and pre-employment drug screens/physicals.

16.     KMG runs two business locations: a headquarters in Bedford, Texas, and another location in Euless, Texas. KMG owns both of these business locations.

17.     David Kaner is the primary owner of KMG and is a medical practitioner at KMG.

## FACTUAL ALLEGATIONS

### KMG BILLS MEDICARE AND TRICARE FOR SERVICES PROVIDED BY UNLICENSED INDIVIDUALS WITHOUT THE PROPER SUPERVISION

18.     KMG maintains an allergy clinic consisting of three rooms within KMG's Bedford medical suite where it tests and treats patients for allergies. The allergy clinic is not a standalone, or separate clinic within the KMG organization.

19.     Otto Gambini ("Gambini") is a medical assistant at KMG who practices in, manages, and coordinates the KMG allergy clinic. Gambini oversees two other medical assistants who provide allergy services to patients within KMG's allergy clinic.

20.     Most days, the medical assistants who provide allergy services start seeing patients at 7:00 a.m., and stop seeing patients at 5:00 p.m., seeing patients approximately every 15 to 30 minutes.

21.     Approximately 60 percent of the patients seen by the medical assistants in KMG's allergy clinic are Medicare beneficiaries.

22.     Some of the patients seen in KMG's allergy clinic are TRICARE or part Medicare beneficiaries.

23.     All patients seen by the medical assistants for allergy care are referred by a KMG provider to KMG's allergy clinic.

24.     A provider can be a physician, a nurse practitioner, or a physician assistant.

25.     The medical assistants in KMG's allergy clinic perform scratch tests or blood tests to diagnose the patient's allergy, and then send the test results to the referring provider to review.

26.     The medical assistants in KMG's allergy clinic, along with the referring provider then follow established KMG protocol to recommend a course of treatment to the patient. The course of treatment could involve anything from avoidance to weekly serum immunization shots.

27.     KMG then bills for the allergy services provided by the medical assistants under the referring provider's NPI regardless of whether or not the referring provider is supervising the medical assistant.

28.     Medicare requires that the provider whose NPI is billed for services must be the person who rendered the services or the person who supervised the services.

29.    For example, on August 30, 2012, KMG submitted a claim to Medicare for patient J.G. for allergy services. The claim form indicated that Dr. Livingstone was the rendering provider.



30.    Patient J.G. was seen by the allergy clinic in Bedford, Texas at 2:00 p.m. on

August 30, 2012.

31.     At the same time, Dr. Livingstone was seeing patient J.C. in Euless, Texas.



32.     Since Dr. Livingstone was in Euless, Texas at the time one of the medical assistants was providing allergy services to patient J.G. in Bedford, Dr. Livingstone could not

possibly be providing the required level of supervision to the medical assistant performing the allergy services in Bedford.

33. During her tenure at KMG, Johnson called a patient's insurance company to inquire about the patient's benefits for allergy treatment. On this call, the insurance company asked for Gambini's NPI.

34. Johnson could not find an NPI number for Gambini.

35. When Johnson asked Deborah Patterson ("Patterson"), another KMG employee, about Gambini's NPI number, Patterson told Johnson that Gambini did not have an NPI number.

36. Patterson told Johnson that Johnson should bill for all of Gambini's services using Kaner's NPI number.

37. Patterson told Johnson that Kaner's NPI number should be used to bill for Gambini's services because Gambini is not a medical doctor.

38. After learning that Gambini is not a medical doctor, Johnson called the medical board of Texas, and a representative confirmed to Johnson that all providers in Texas must be licensed in Texas.

39. Gambini is not licensed or permitted to practice medicine in Texas in any regard.

40. None of the medical assistants who provide allergy services are licensed to practice medicine in the state of Texas.

41. KMG knows that Gambini, and the other medical assistants are not licensed to practice medicine in Texas.

42. The medical assistants, in accordance with KMG's allergy protocol and with assistants from the provider, interpret allergy test results, design courses of treatment, and counsel patients one-on-one as to KMG's recommendations for allergy treatments.

43. KMG receives payment for the services provided by medical assistants.

44. KMG holds Gambini out as a licensed medical doctor.

45. KMG's website listed the initials "M.D." following Gambini's name.

46. At some point after Johnson instituted this action, KMG amended its website to remove the initials "M.D." following Gambini's name.

47. KMG submits claims to Medicare for the unlicensed services provided by the medical assistants.

48. Medicare paid out claims for approximately 60 percent of all allergy services provided by the medical assistants.

49. KMG submitted claims to TRICARE and part Medicare insurers for the medical assistants' unlicensed services.

50. TRICARE and part Medicare insurers pay out claims for the medical assistants' services.

## KMG REFUSES TO REFUND UNNECESSARILY COLLECTED COPAYS TO PATIENTS

51. As part of her job duties, Johnson reviewed a financial document called an "aging," which refers to long-term outstanding credit balances.

52. While reviewing an aging, Johnson discovered that KMG charged patients who had Medicare as their primary insurance and Medicaid as their secondary insurance copays that should not have been charged.

53. At the time Johnson worked there, KMG owed approximately $60,000 in unnecessarily collected copays to its Medicare patients.

54. Upon discovery that KMG owed its Medicare patients $60,000, Johnson began refunding the unnecessarily collected patient copays.

55.     Shortly after Johnson began refunding the unnecessarily collected copays, Jamie Baker ("Baker"), KMG's director of operations, told Johnson to stop refunding the copays.

56.     Baker told Johnson that KMG could not afford to refund the unnecessarily collected copays to patients.

57.     Baker informed Johnson that KMG would retain these funds unless and until patients called to complain.

58.     Very few patients called to complain about the unnecessarily collected copays.

59.     Johnson's colleague Patterson informed Johnson that KMG kept unnecessarily collected copays because "it looks good to banks."

60.     KMG not only illegally collects copays from patients with Medicare as their primary insurance provider, and Medicaid as their secondary insurance provider, KMG also illegally retains the money from these patients and does not refund the illegally collected money.

**KMG TERMINATES RELATOR BECAUSE OF HER QUESTIONS ABOUT KMG'S PRACTICES**

61.     KMG is almost entirely staffed by Medical Management Services ("MMS"), a managed service organization owned entirely by Kaner and Judith Kutler ("Kutler").

62.     Kutler is also part owner, and Administrator of KMG.

63.     While employed by MMS, Johnson was contracted out to KMG to provide service for, and on behalf of, KMG.

64.     During the months that Johnson worked at KMG, she became suspicious of Defendants' practices.

65.     On June 18, 2012, Johnson sent Baker and KMG CEO Judith Kutler an email describing a number of problems with KMG's billing and accounting practices, including failure to refund unnecessarily collected Medicare copays.

66.     Baker read Johnson's email on or about June 18, 2012, and Kutler read Johnson's email three or four days after it was sent.

67.     On June 26, 2012, Baker informed Johnson that Kutler wanted to speak with Johnson.

68.     Johnson and Baker then went into Kutler's office.

69.     When they met, Kutler told Johnson words to the effect of, "I don't want to lose the company behind you."

70.     When she said, "I don't want to lose the company behind you," Kutler meant that Johnson's questioning of KMG's illegal business practices was the reason for her termination.

71.     On June 26, 2012, the day she was terminated, Johnson was, at once, given three "final written notices" of discipline.

72.     Johnson had never before received any verbal warnings or disciplinary notices related to the "final written notices."

73.     KMG produced the "final written notices" as a pretext to terminating Johnson for questioning KMG's illegal business practices.

## COUNT I

**Defendants Knowingly Presented False or Fraudulent Claims for Payment to the United States of America in Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**

74.     Johnson incorporates herein by reference and re-alleges the allegations stated in the foregoing paragraphs.

75.     Defendants knowingly present or cause to be presented to the United States of America, false or fraudulent claims, and knowingly fail to disclose material facts, in order to obtain payment or approval under the federally-funded Medicare program, TRICARE programs,

and part Medicare programs when they bill for allergy services performed by medical assistants under the referring provider's NPI even when the referring provider is not the provider supervising the services.

76.     Defendants knowingly present or cause to be presented to the United States of America, false or fraudulent claims, and knowingly fail to disclose material facts, in order to obtain payment or approval under the federally-funded Medicare program, TRICARE programs, and part Medicare programs, in violation of 31 U.S.C. § 3729(a)(1)(A).

77.     The United States of America, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy thereof, pay Defendants for such false or fraudulent claims.

78.     By reasons of the acts and conduct of Defendants in violation of 31 U.S.C. § 3729(a)(1)(A), the United States of America has suffered actual damages, including the amounts paid in response to all such fraudulent claims for payment.

79.     By reason of Defendants' failure to properly bill for services provided by non-licensed medical assistants, the United States Government is, and has been, paying for medical tests and procedures that were performed by unlicensed practitioners without the appropriate supervision.

80.     The United States of America is entitled to recover civil money penalties, and other monetary relief as deemed appropriate. And Johnson is entitled to recover litigation costs and reasonable attorneys' fees.

## COUNT II

**Defendants Knowingly Conceal or Knowingly and Improperly Avoid or Decrease an Obligation to Pay Money to the United States of America in Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G)**

81.     Johnson incorporates herein by reference and re-alleges the allegations stated in the foregoing paragraphs.

82.     Defendants knowingly conceal or knowingly and improperly avoid an obligation to pay money to the United States of America when they collect money from patients who have Medicare as their primary insurance provider and Medicaid as their secondary insurance provider and still collect the full amount of reimbursement from Medicare and Medicaid for that patient's services.

83.     Defendants knowingly conceal or knowingly and improperly avoid an obligation to pay money to the United States of America, in violation of 31 U.S.C. § 3729(a)(1)(G).

84.     The United States of America, unaware of Defendants' reimbursement by the patient, pay Defendants in full for such false or fraudulent claims.

85.     By reasons of the acts and conduct of Defendants in violation of 31 U.S.C. § 3729(a)(1)(G), the United States of America has suffered actual damages, including the amounts paid in response to all such fraudulent claims for payment.

86.     By reason of Defendants' failure to properly return monies collected from patients with Medicare as their primary insurance provider, and Medicaid as their secondary insurance provider, the United States Government is, and has been, paying for services that KMG has already collected money for.

87.     The United States of America is entitled to recover civil money penalties, and other monetary relief as deemed appropriate. And Johnson is entitled to recover litigation costs and reasonable attorneys' fees.

## COUNT III

### Defendants Retaliated Against Johnson for Engaging in Acts Protected by the False Claims Act, 31 U.S.C. § 3730(h)

88.     Johnson incorporates herein by reference and re-alleges the allegations stated in the foregoing paragraphs.

89.     As set forth above, and in connection with the foregoing scheme, Defendants conspired to get false or fraudulent claims paid or approved by the United States of America in violation of the False Claims Act.

90.     Johnson was an "employee, contractor, or agent" of KMG, and KMG and Kaner are "employers," as each of those terms is defined by the False Claims Act.

91.     Johnson's employment was terminated as a result of her voluntarily performing lawful acts to investigate one or more violations of the False Claims Act, including questioning KMG's business practices and attempting to refund unnecessarily collected and improperly retained patient copays. At all relevant times, Johnson was engaging in activity protected by the False Claims Act. Defendants, knowing that Johnson was engaging in such activity, terminated her employment because of her protected conduct.

92.     To redress harms she suffered as a result of the acts and conduct of Defendants in violation of 31 U.S.C. § 3730(h), Johnson is entitled to damages, including two times the amount of back pay, interest on back pay, and compensation for special damages, including personal injury damages for pain and suffering, emotional distress, loss of reputation, back pay, and

interest, and any other damages available by law including litigation costs and reasonable attorneys' fees.

## JURY DEMAND

93.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Johnson hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Relator Darilyn Johnson, acting on behalf of, and in the name of, the United States of America, and on her own behalf, demands and prays that judgment be entered against Defendants for violations of the False Claims Act, as follows:

(a) In favor of the United States of America against Defendants for treble the amount of damages to the federal Medicare program, the TRICARE program, and other part Medicare programs from the submission of false claims plus the maximum civil penalties for each violation of the False Claims Act;

(b) In favor of Relator for the maximum amount pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorneys' fees and costs incurred by Relator;

(c) For all costs of the False Claims Act civil action;

(d) In favor of Relator for all compensatory and punitive damages, including personal injury damages for pain and suffering, emotional distress, and loss of reputation, back pay, and interest, and attorneys' fees and costs to which she is entitled under 31 U.S.C. § 3730(h);

(e) In favor of Relator and the United States of America for such other and further relief, at law or in equity, as this court deems to be just and equitable;

(f) Such other relief as this Court deems just and appropriate.

Respectfully submitted,


David I. Scher, Esq. (Pro Hac Vice)
R. Scott Oswald, Esq. (Pro Hac Vice)

THE EMPLOYMENT LAW GROUP, P.C.
888 17th Street, NW, 9th Floor
Washington, D.C. 20006
(202) 261-2803
(202) 261-2835 (facsimile)
Dscher@employmentlawgroup.com
Soswald@employmentlawgroup.com

Richard B. Roper
State Bar No. 17233700
Jennifer Ecklund
State Bar No. 24045626
David C. Schulte
State Bar No. 24037456

THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (facsimile)
ATTORNEYS FOR QUI TAM
RELATOR DARILYN JOHNSON

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2014, a true and correct copy of this document was served via first-class mail (and a courtesy copy by email) on the following:

Clayton E. Devin
Macdonald Devin, PC
3800 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
*Counsel for Defendants*

Rebecca S. Davies
Butzel Long, PC
150 W. Jefferson Avenue, Suite 100
Detroit, MI 48226
*Counsel for Defendants*

Alan Rogalski
Warner Norcross & Judd LLP
2000 Town Center, Suite 2700
Southfield, Michigan  48075-1318
*Counsel for Defendants*

Scott Hogan, Esq.
U.S. Attorneys Office
1100 Commerce Street, Third Floor
Dallas, TX 75242-1699
*Counsel for the Government*


_____
David C. Schulte