U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 19 2014

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| ex rel. DARILYN JOHNSON, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:12-CV-757-A |
| | § | |
| KANER MEDICAL GROUP, P.A., | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

This action was brought by qui tam relator, Darilyn Johnson,

individually and on behalf of United States of America,

("plaintiff") under the authority of the False Claims Act,

31 U.S.C. §§ 3729, et seq. ("FCA"). Before the court for

consideration and decision is the motion of plaintiff for partial

summary judgment. After having considered such motion, the

opposition thereto of defendants, Kaner Medical Group, P.A.

("Kaner PA") and David Kaner ("D. Kaner"), plaintiff's reply, the

entire summary judgment record, and pertinent legal authorities,

the court has concluded that plaintiff's motion should be denied

except as to two facts related to her Count III claim.

I.

<u>History and Nature of the Litigation</u>

A.   <u>History</u>

This action was initiated in October 2012 by a complaint filed by plaintiff pursuant to the authority of the FCA seeking recovery of damages for alleged false claims violations of 31 U.S.C. § 3729(a)(1)(A) and for alleged retaliation against Johnson in violation of 31 U.S.C. § 3730(h).  The defendants named in the original complaint were Kaner PA, D. Kaner, Otto Gambini ("Gambini"), and Judith Kutler ("Kutler").  As contemplated by 31 U.S.C. § 3730(b)(2) the case was filed <u>in camera</u>, and remained under seal to give the government an opportunity to investigate the merits of the claims and to intervene in the action if it chose to do so.

In December 2012 the court, upon motion filed by the government, granted the government an extension to March 29, 2013, to decide whether to intervene or to notify the court of its declination to do so.  On March 28, 2013, the government filed a notice of non-intervention, and a request that the complaint be unsealed and served on the defendants.  Such an order was issued on April 2, 2013.

In August 2013 defendants Kaner PA, D. Kaner, and Gambini filed a motion to dismiss the complaint based on plaintiff's

2

alleged noncompliance with the pleading requirements of Rules 8 and 9(b) of the Federal Rules of Civil Procedure, to which plaintiff filed a response in opposition.  While that motion was pending decision, plaintiff filed a stipulation of dismissal of the claims asserted against Kutler, the government filed its consent to the requested dismissal, and on November 7, 2013, the court issued a final judgment dismissing the claims asserted against Kutler.  In December 2013 the court issued an order denying the August 2013 motion to dismiss of Kaner PA, D. Kaner, and Gambini.  In March 2014 plaintiff filed her first amended complaint pursuant to leave of court.

In September 2014 Kaner PA, D. Kaner, and Gambini filed a motion for summary judgment, to which plaintiff responded in opposition.  In October 2014 plaintiff again sought to amend her complaint by the filing of a second amended complaint that would, inter alia, delete Gambini as a defendant.  On October 29, 2014, the government filed its consent to dismissal of the claims against Gambini, and on November 4, 2014, the court issued a final judgment dismissing those claims.  The second amended complaint was then filed pursuant to leave of court.  On November 4, 2014, the court issued an order denying the September 2014 motion for summary judgment.  As the court explained in a telephone conference/hearing the court conducted October 16,

2014, the denial was not based on substantive reasons but was because of the failure of the movants to file a procedurally proper motion.[1]

The motion for partial summary judgment now under consideration was filed by the plaintiff on November 14, 2014, Kaner PA and D. Kaner filed their response in opposition on November 26, 2014, to which plaintiff replied on December 4, 2014.

B.   Nature of Allegations Made in the Second Amended Complaint

In plaintiff's second amended complaint ("complaint") she asserted 31 U.S.C. §§ 3730(b) and (h) claims.  She alleged two false claim theories, one based on 31 U.S.C. § 3729(a)(1)(B) and the other based on 31 U.S.C. § 3729(a)(1)(G).  The remaining defendants are Kaner PA and D. Kaner.

Plaintiff alleged that she worked for Kaner PA as a patient financial counselor for a little over two months in the Spring of 2012, that because of her employment and job duties she was in a position to see most of Kaner PA's patients, regularly reviewed patients' insurance and medical records, and sometimes met with the patients to explain their insurance coverage.  She alleged

---

[1]Defendants were given leave of court to file a second motion for summary judgment, and they attempted to do so, but unsuccessfully because of procedural shortcomings.

that Kaner PA is a corporation, and that D. Kaner is the primary owner of, and a medical practitioner at, Kaner PA.

The Factual Allegations' section of the complaint provided the alleged factual bases of plaintiff's two false claim theories and her retaliation theory.

The first false claim theory was that Kaner PA defrauded the government in violation of § 3729(a)(1)(A) by billing Medicare and TRICARE for medical services that were provided by unlicensed individuals without proper supervision. Plaintiff alleged that Kaner PA submitted claims to Medicare, which were paid by Medicare, for sixty percent of all allergy services provided by medical assistants, and submitted claims to TRICARE and part Medicare, which were paid by TRICARE and part Medicare, for medical assistants' unlicensed services. Included in the allegations that were made to provide the factual bases for the first theory is an example of a claim submitted on August 30, 2012, by Kaner PA to Medicare for allergy services on August 30 to a patient identified as J.G. Plaintiff alleged that the claim form identified Dr. Livingston as the rendering provider. Plaintiff also included in this part of the complaint a copy of the internal Kaner PA record showing that when J.G. was being seen by Kaner PA on August 30, at its Bedford, Texas facility, Dr. Livingston was, at the same time, seeing a patient identified

as J.C. at Kaner PA's Euless, Texas facility, proving, according to plaintiff, that Dr. Livingston could not possibly be providing the required level of supervision to the medical assistant performing the allergy services for J.G. in Bedford, Texas.

The second false claim theory was that Kaner PA and D. Kaner violated 31 U.S.C. § 3729(a)(1)(G) by unnecessary collection of copays by Kaner PA from patients who had Medicare as their primary insurance and Medicaid as their secondary insurance and the failure of Kaner PA to return those unnecessarily collected copays to its Medicare patients. According to plaintiff, she was told by an employee of Kaner PA that Kaner PA would retain the unnecessarily collected copays unless and until patients called to complain, and that very few patients called to complain about the copays. Plaintiff summed up her factual basis of this theory by alleging that "[Kaner PA] not only illegally collects copays from patients with Medicare as their primary insurance provider, and Medicaid as their secondary insurance provider, [Kaner PA] also illegally retains the money from these patients and does not refund the illegally collected money." Compl. at 10, ¶ 60.

Plaintiff's alleged factual bases of her retaliation theory brought under 31 U.S.C. § 3730(h)(1) is that she was terminated from her employment with Kaner PA by Kutler a few days after plaintiff sent Kutler and another person an email describing a

number of problems with Kaner PA's billing and accounting

practices, including failure to refund unnecessarily collected

Medicare copays.  Id. at 10, ¶ 65.  According to plaintiff, when

Kutler told plaintiff that she was discharged, Kutler used words

to the effect of "I don't want to lose the company behind you,"

id. at 11, ¶ 69, which plaintiff took to mean that her

questioning of Kaner PA's business practices was the reason for

her termination.

The complaint contains three counts, the first two

corresponding to the previously described false claim theories,

and the third corresponding to plaintiff's retaliation theory.

In Count I plaintiff summed up her first false claim theory as

follows:

> Defendants knowingly present or cause to be
> presented to the United States of America, false or
> fraudulent claims, and knowingly fail to disclose
> material facts, in order to obtain payment or approval
> under the federally-funded Medicare program, TRICARE
> programs, and part Medicare programs when they bill for
> allergy services performed by medical assistants under
> the referring provider's NPI even when the referring
> provider is not the provider supervising the services.

Id. at 11-12, ¶ 75.  She summed up her second false claim theory

in Count II as follows:

> Defendants knowingly conceal or knowingly and
> improperly avoid an obligation to pay money to the
> United States of America when they collect money from
> patients who have Medicare as their primary insurance
> provider and Medicaid as their secondary insurance

provider and still collect the full amount of
reimbursement from Medicare and Medicaid for that
patient's services.

Id. at 13, ¶ 82.  Plaintiff summed up her Count III retaliation

theory as follows:

> Johnson's employment was terminated as a result of
> her voluntarily performing lawful acts to investigate
> one or more violations of the False Claims Act,
> including questioning KMG's business practices and
> attempting to refund unnecessarily collected and
> improperly retained patient copays.  At all relevant
> times, Johnson was engaging in activity protected by
> the False Claims Act.  Defendants, knowing that Johnson
> was engaging in such activity, terminated her
> employment because of her protected conduct.

Id. at 14, ¶ 91.

II.

### Grounds of Plaintiff's Motion, Defendants' Response, and Plaintiff's Reply

A.   Grounds of the Motion

Plaintiff has moved the court to grant her a partial summary

judgment (1) in favor of United States of America and plaintiff

against Kaner PA and D. Kaner for liability under 31 U.S.C.

§ 3729(a)(1)(A),[2] and (2) in favor of plaintiff against Kaner PA

and D. Kaner "on Plaintiff's protected activity and Defendants'

---

[2]Section 3729(a)(1)(A) of Title 31 of the United States Code provides, in pertinent part, that "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . . is liable to the United States Government for a civil penalty . . . plus 3 times the amount of damages which the Government sustains because of the act of that person."

knowledge of Plaintiff's protected activity under 31 U.S.C. § 3730(h),"[3] Mot. at 3, with hearings to be scheduled in the future on damages to be awarded for Defendants' alleged violations of the FCA.   The specific grounds of the motion, as alleged therein, are as follows:

    I.    Plaintiff is entitled to summary judgment on liability on Count 1 -- FCA violations under 31 U.S.C. § 3729(a)(1)(A) because the undisputed evidence demonstrates that KMG:

    (1)    makes false statements to the Government when it enters the referring provider's information in the rendering providers box on claims to the Government, delegates incident-to services to non-employee medical assistants, and delegates incident-to services to an unlicensed medical assistant who is advertised as a licensed medical doctor;

    (2)    possesses the requisite scienter under the FCA in that it shows a reckless disregard to the truth or falsity of the information it submits on its claim forms;

    (3)    submits claims to the Government which is material to the Government's decision to reimburse the services provided; and

---

[3]Section 3730(h) of Title 31 of the United States Code reads, in pertinent part, as follows:
Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

> (4)  in submitting claims to the Government
>       for reimbursement, causes the Government
>       to pay money to KMG.

> II.  Plaintiff is entitled to partial summary judgment
>      on her protected activity and KMG's knowledge of
>      her protected activity under Count III -- FCA
>      violations under 31 U.S.C. § 3729(h) because the
>      undisputed evidence demonstrates that:

> (1)  Plaintiff was an employee, contractor,
>      or agent as defined by the FCA;

> (2)  Plaintiff engaged in protected conduct;

> (3)  KMG management had knowledge of
>      Plaintiff's protected conduct; and

> (4)  KMG took adverse action against
>      Plaintiff when it fired her.

Id. at 2-3.[4]  The motion was supported by a declaration of one of

the attorneys for plaintiff and twenty-nine exhibits that are

referenced in the declaration.[5]

   While plaintiff discusses in her motion facts related to her

second false claim theory, the theory pertaining to alleged

improper collection and retention of copays, she does not urge

that theory as a ground for the false claim feature of her

motion.

---

[4]Plaintiff refers to Kaner PA by the abbreviated reference "KMG."

[5]To whatever extent the grounds of the motion might be viewed to expand the 31 U.S.C.
§ 3729(a)(1)(A) claim alleged by plaintiff in her second amended complaint, the court is not giving effect
to the expansion because the court is not allowing plaintiff to add to her pleaded claims by assertions
made for the first time in her motion for partial summary judgment.

B.   <u>The Response of Kaner PA and D. Kaner</u>

As outlined in the contents section of their brief, Kaner PA and D. Kaner responded to plaintiff's motion with the following contentions:

I.   RELATOR IS NOT ENTITLED TO SUMMARY JUDGMENT ON LIABILITY UNDER COUNT I OF HER SECOND AMENDED COMPLAINT

    A.   Defendants Made No False Statement

        1.   Defendants Did Not Make False Statements When They Entered the Referring Provider's Information in the Rendering Provider's Box on Claim Forms

        2.   Defendants Made No False Statements When They Delegated Incident-to Services to Non-Employee Medical Assistants

        3.   Defendants Made No False Statements When They Delegated Incident-To Services to An Unlicensed Medical Assistant And Never Advertised Any Medical Assistant as Licensed Medical Doctor

    B.   Relator Lacks Any Undisputed Material Evidence to Prove that Defendants Possessed the Requisite Scienter Required Under the FCA and Lacks Any Undisputed Material Evidence that Defendants Acted with Reckless Disregard to the Truth or Falsity of the Information Submitted on Its Claim Forms

    C.   Defendants' Claims to the Government Were Not Material to the Government's Decision to Reimburse the Services Provided

    D.   Defendants in Submitting Claims to the Government for Reimbursement Did Not Cause the Government to Pay Any More Money to KMG than Amounts They Were Entitled to Receive

II.   Relator Has Failed to Demonstrate a Prima Facie
      Claim of Retaliation

     A.   The Relat[or] Was Not Engaged in Any Activity
          Protected by the False Claims Act

     B.   The Relator Cannot Demonstrate Her Employer
          Knew That She Was Engaged in a Protected
          Activity

     C.   The Relator Was Not Discharged Because of
          Her Alleged Protected Activity

Resp., Br. at i-ii.[6]  The response was supported by forty
exhibits.

C.   Plaintiff's Reply

    Defendants suggested in their response that the court enter
summary judgment for defendants _sua_ _sponte_.  Plaintiff devotes
part of the reply to an argument as to why a _sua_ _sponte_ summary
judgment ruling for defendants would not be appropriate.  Beyond
that, the reply is something of a rehash of the grounds of the
motion, with an emphasis on replying to arguments made by
defendants in their response.

---

[6]Defendants refer to plaintiff as "Relator."

III.

Analysis

A.   Plaintiff's Summary Judgment Burdens

To be entitled to summary judgment as to any of her theories, plaintiff must carry her burden of showing that there is no genuine dispute as to any fact material to such theory and that she is entitled to judgment as a matter of law as to that theory. Fed. R. Civ. P. 56(a). Plaintiff also had the summary judgment burden to support each of her assertions that a fact cannot be genuinely disputed by "citing to particular parts of materials in the summary judgment record." Fed. R. Civ. P. 56(c)(1)(A).

B.   The § 3730(b) Claim

1.   Proof Requirements for the § 3730(b) Claim

The Fifth Circuit has explained that:

[W]e have adopted four elements that a relator must satisfy in order to state a cause of action under the FCA generally: (1) a false statement or fraudulent course of conduct; (2) that was made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money (i.e., that involved a claim).

United States ex rel. Spicer v. Westbrook, 751 F.3d 354, 365 (5th Cir. 2014). Or, as the Fifth Circuit said in United States v. Southland Mgmt. Corp., 288 F.3d 665 (5th Cir. 2002),

13

> For the Defendants to be liable under § 3729(a)(1),
> courts agree that the Government must demonstrate that:
> (1) the Defendants made a claim against [the government];
> (2) the claim was false or fraudulent; and (3) the
> Defendants knew the claim was false or fraudulent.

Id. at 675.[7] "A claim under the FCA requires presentation of a knowingly false claim to the government for payment; i.e., the requirements are a knowing conduct, falsity, and materiality." United States ex rel. Steury v. Cardinal Health, Inc., 735 F.3d 202, 205 (5th Cir. 2013).[8]

---

[7] The current version of what the Fifth Circuit in Southland Mgmt. Corp. referred to as § 3729(a)(1) is 31 U.S.C. § 3729(a)(1)(A).

[8] The FCA defines "knowing" and "knowingly" as follows:
   (1) the terms "knowing" and "knowingly"--
      (A)   mean that a person, with respect to information--
         (i)  has actual knowledge of the information;
         (ii) acts in deliberate ignorance of the truth or falsity of the information; or
         (iii) acts in reckless disregard of the truth or falsity of the information; and
      (B)   require no proof of specific intent to defraud. . . .
31 U.S.C. § 3729(b)(1).

The term "claim" is defined in the FCA as follows:
   (2) the term "claim"--
      (A)   means any request or demand, whether under a contract or otherwise,
for money or property and whether or not the United States has title to the
money or property, that--
         (i)  is presented to an officer, employee, or agent of the United States; or
         (ii) is made to a contractor, grantee, or other recipient, if the money or property
is to be spent or used on the Government's behalf or to advance a Government
program or interest, and if the United States Government--
            (I)   provides or has provided any portion of the money or property requested
or demanded; or
            (II)  will reimburse such contractor, grantee, or other recipient for any portion
of the money or property which is requested or demanded; and
      (B)   does not include requests or demands for money or property that the Government
has paid to an individual as compensation for Federal employment or as an income
subsidy with no restrictions on that individual's use of the money or property. . . .
31 U.S.C. § 3729(b)(2).

"The FCA is a fraud prevention statute, and not a general enforcement device for federal statutes, regulations and contracts." <u>United States ex rel. Patton v. Shaw Servs. L.L.C.</u>, 418 F. App'x 366, 369, No. 10-30376, 2011 WL 924292 (5th Cir. Mar. 17, 2011) (internal quotation marks omitted).[9] "The FCA does not create liability for a contractor's breach of a contractual provision or regulation unless, as a result of such acts, the [contractor] knowingly asks the Government to pay amounts it does not owe." <u>Id.</u> (internal quotation marks omitted). "For FCA liability to attach, not only must the defendant submit false claims, but the defendant must have knowingly or recklessly cheated the government." <u>Id.</u> at 371 (internal quotation marks omitted).

Allegations that the claimant engaged in improper practices relative to the subject matter of a claim submitted to the government "are insufficient to create a genuine dispute as to whether [the claimant] knowingly or recklessly submitted false claims to the government." <u>Id.</u> "Not every breach of a federal contract is an FCA problem." <u>United States ex rel. Steury v. Cardinal Health, Inc.</u>, 625 F.3d 262, 268 (5th Cir. 2010).

---

[9]The court recognizes that <u>Shaw Servs. L.L.C.</u> is an unpublished opinion of the Fifth Circuit, but the court nevertheless finds its rulings informative.

A person asserting a false claim cause of action "must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim." United States ex rel. Longhi v. United States, 575 F.3d 458, 467 (5th Cir. 2009) (internal quotation marks omitted). The "mens rea requirement is not met by mere negligence or even gross negligence." United States ex rel. Farmer v. City of Houston, 523 F.3d 333, 338 (5th Cir. 2008). For an allegedly fraudulent representation made in a claim to be "material," the representation must have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3730(b)(4).

"It is a long-established rule of [the Fifth] Circuit that to show a violation of the FCA, the evidence must demonstrate guilty knowledge of a purpose on the part of [the defendant] to cheat the Government." United States ex rel. Taylor-Vick v. Smith, 513 F.3d 228, 231 (5th Cir. 2008)(internal quotation marks omitted). Instructive is the following language used by the Fifth Circuit in its unpublished opinion in United States ex rel. Bradley v. Comstock Res., Inc.:

> By its own terms, the FCA imposes no liability unless the alleged violator (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the

16

> information. . . .   [T]his means that the evidence must
> demonstrate guilty knowledge of a purpose on the part
> of [the defendant] to cheat the government, or
> knowledge or guilty intent.

456 F. App'x 347, 351, No. 10-40785, 2011 WL 6259893 (5th Cir.

Dec. 15, 2011)(citations and internal quotation marks omitted).

The FCA "attaches liability, not to the underlying

fraudulent activity or to the government's wrongful payment, but

to the claim for payment." United States ex rel. Longhi, 575

F.3d at 467 (internal quotation marks omitted).  Moreover, the

FCA does not create liability for "improper internal policies

unless, as a result of such acts, the provider knowingly asks the

Government to pay amounts it does not owe." United States ex

rel. Willard v. Humana Health Plan of Tex., 336 F.3d 375, 381

(5th Cir. 2003).  "It is only those claims for money or property

to which a defendant is not entitled that are 'false' for

purposes of the False Claims Act." United States v. Southland

Mgmt. Corp., 326 F.3d 669, 674-75 (5th Cir. 2003)(en banc).  The

en banc Fifth Circuit added that:

> Although § 3729(a)(2) prohibits the submission of a
> false record or statement, it does so only when the
> submission of the record or statement was done in an
> attempt to get a false claim paid. There is no
> liability under this Act for a false statement unless
> it is used to get false claim paid.

Id. at 675.

2.   Application of the FCA Proof Requirements to
     Plaintiff's § 3730(b) Claim

Plaintiff does not seek summary judgment as to her pleaded 31 U.S.C. § 3729(a)(1)(G) claim that is described on page 6 of this memorandum opinion.  Accordingly, the court's discussion under this heading is limited to the § 3729(a)(1)(B) claim.[10]

In this memorandum opinion the court assumes, for the sake of discussion, that the summary judgment record has evidence that Kaner PA submitted claims to the government that contained inaccurate healthcare provider information.  Plaintiff's FCA liability theory is built on such a contention.  Even if there were summary judgment evidence to support plaintiff's contention

---

[10]Of interest is the evolution of plaintiff's claims.  In her original complaint, in which she named two additional defendants, she placed significant emphasis on a contention that Kaner PA rendered unnecessary medical services for which it submitted claims to the government. Orig. Compl. at 6-7, ¶¶ 47-64 (Oct. 25, 2012).  She carried her "medically-unnecessary-services" theory into her first amended complaint. 1st Am. Compl. at 5-7, ¶¶ 51-71 (Mar. 19, 2014).  Plaintiff abandoned that theory when she filed her second amended complaint. 2d Am. Compl. (Nov. 4, 2014).  As noted, she appears now to have abandoned the false claim theory that was based on her assertions that defendants wrongfully collected and withheld copays.

Similarly, in her original complaint she alleged facts that she said caused Kutler to be in violation of the FCA.  Then she abandoned her claim against Kutler before she filed her first amended complaint.  After again naming Gambini in the first amended complaint, alleging facts that supposedly caused him to be liable for FCA violations, plaintiff abandoned her claim against Gambini with the filing of her second amended complaint.  Plaintiff's original complaint did not make reference to any individual other than Gambini as having provided the treatment for which plaintiff alleged defendants submitted false claims. Orig. Compl. at 4-6, ¶¶ 19-46.  In the first amended complaint, plaintiff again made no mention of any individual other than Gambini as having rendered services to patients for which allegedly false claims were submitted. 1st Am. Compl. at 3-5, ¶¶ 19-50.  Not until plaintiff chose to abandon her claims against Gambini in the second amended complaint did she decide that other unlicensed individuals were the subjects of the allegedly false claims. 2d Am. Compl. at 3-9, ¶¶ 18-50.

While not determinative of summary judgment issues, the kaleidoscopic changes in plaintiff's theories and claims bear on the credibility of plaintiff's contention that her FCA claims arose from the personal knowledge she acquired during her two-month tenure of employment at Kaner PA.

that claims submitted by Kaner PA to the government for payment contained factual inaccuracies relative to healthcare providers, the court would not be able to conclude that other elements of proof essential to an FCA claim are supported by summary judgment evidence.

The court is not satisfied that there is summary judgment evidence that would support a finding that Kaner PA submitted any of the claims to the government with "guilty knowledge of a purpose on the part of [Kaner PA] to cheat the government." United States ex rel. Taylor-Vick, 513 F.3d at 231 (internal quotation marks omitted). Nor is the court satisfied that there is summary judgment evidence that any inaccurate information in the claims submitted by Kaner PA for payment "caused the government to pay out money." United States ex rel. Spicer, 751 F.3d at 365. For all the summary judgment record reflects, the government would have honored the claims even if accurate healthcare provider information had been in the claim forms.

At most, plaintiff has adduced in the summary judgment record evidence that Kaner PA perhaps was negligent in its indications in the claim forms of healthcare provider information. However, the "mens rea requirement is not met by mere negligence or even gross negligence." United States ex rel. Farmer, 523 F.3d at 338.

The criticisms plaintiff makes in her summary judgment presentations of defendants' use of Gambini as a medical assistant and of defendants' conduct generally in their medical practice might or might not be valid in whole or in part. However, those criticisms are nothing more than distractions from the true issues in this case inasmuch as the FCA does not create liability for "improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." United States ex rel. Willard, 336 F.3d at 381. From the outset, plaintiff has sought to build a case on what she said she perceived to be irregular internal policies of defendants. She has sought to construct on that platform her claims that defendants violated the FCA. However, she has not been successful.

Summed up, plaintiff has failed to adduce summary judgment evidence in support of any of the proof requirements for an FCA claim under § 3730(b) other than the possibility that there is evidence that some of the claim forms Kaner PA submitted for payment contain inaccurate healthcare provider information. Therefore, plaintiff's motion for partial summary judgment as to her § 3730(b) claim based on an alleged violation of § 3729(a)(1)(B) is being denied.

C.   The § 3730(h) Claim

    1.   Proof Requirements for the § 3730(h) Claim

    The intent of § 3730(h) of Title 31 of the United States Code is to prevent the harassment, retaliation, or threatening of employees who assist in or bring qui tam actions. Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994). A successful plaintiff must prove that she engaged in the protected activity and "must show the employer had knowledge the employee engaged in protected activity." Id. (internal quotation marks omitted). In cases in which the plaintiff has been successful, "the employee told the employer that she was concerned about the company defrauding the government." Id. If the conduct on which the employee relies as making known to the employer that the employee is engaging in protected activity is consistent with the performance of the employee's duties, such conduct does not provide the requisite notice to the employer. Id. at 952; see also Sealed Appellant I v. Sealed Appellee I, 156 F. App'x 630, 634-35, No. 04-41585, 2005 WL 3178190 (5th Cir. Nov. 29, 2005). The employee must identify in support of his retaliation claim that his conduct "objectively demonstrated his qui tam intentions." Robertson, 32 F.3d at 952.

    If the employee does not present sufficient evidence to support a finding that the employer was aware that his conduct

was in furtherance of a _qui tam_ action, the employer can "not possess the retaliatory intent necessary to establish a violation of the whistleblower provision of the False Claims Act."   _Id._

Mere criticism by an employee of the employer's methods of conducting business, "without any suggestion that [the employee] was attempting to expose illegality or fraud _within the meaning of the FCA_, does not rise to the level of protected activity." _United States ex rel. Patton_, 418 F. App'x at 372 (emphasis added).

### 2.   Plaintiff Has Adduced No Summary Judgment Evidence in Support of Her § 3730(h) Claim Requirements

Plaintiff limits her § 3730(h) motion for partial summary judgment requests to determinations that:

> (1)   Plaintiff was an employee, contractor, or agent as defined by the FCA;
>
> (2)   Plaintiff engaged in protected conduct;
>
> (3)   KMG management had knowledge of Plaintiff's protected conduct; and
>
> (4)   KMG took adverse action against Plaintiff when it fired her.

Mot. at 3.

There seems to be no dispute in the summary judgment record as to items (1) and (4). Plaintiff was an employee of a company related to Kaner PA and was performing her duties of employment for and at Kaner PA; and, quite obviously her termination of

22

employment at Kaner PA was an adverse action.  However, the court is not persuaded that plaintiff has adduced any summary judgment evidence in support of her contentions that she engaged in protected conduct and that Kaner PA had knowledge that she was engaged in protected conduct.

Plaintiff calls the court's attention to two evidentiary factors that she claims support her contentions on those subjects.  She points to an email she sent to Kutler on June 18, 2012, as evidence that she engaged in protected activity.  Mot., App. at 364.  She then combines that with her assertion that when she was told by Kutler a few days later that she was being discharged, Kutler commented to her that "I don't want to lose the company behind you." 2d Am. Compl. at 11, ¶ 70.

The June 18 email would not alert anyone that plaintiff was engaged in protected activity.  Rather, it expressed concern relative to Kaner PA's collection efforts, contained suggestions as to how Kaner PA might improve its collections, and expressed concern relative to Kaner PA's billing practices and refund practices related to Medicaid patients.  Mot., App. at 364.  The email did not contain anything suggesting that plaintiff was of the belief that Kaner PA was submitting false claims or that plaintiff was investigating or making inquiry into that subject. Rather, the appearance from the record is that the contents of

23

the email were directly related to, and consistent with, the performance of plaintiff's duties of employment at Kaner PA.

Therefore, except as to items (1) and (4) the summary judgment rulings sought by plaintiff as to her § 3730(h) claim are being denied.

D.   The Suggestion by Defendants that the Court *Sua Sponte* Grant Summary Judgment in Favor of Defendants

In defendants' brief in opposition to plaintiff's motion for partial summary judgment, defendants suggest that the court sua sponte enter summary judgment in favor of defendants based on the existing summary judgment record. Defs.' Br. at 3, 11, 38, 39, 44, 45. Understandably, plaintiff opposes that suggestion. Reply Br. at 2-3.

The court agrees with plaintiff that the court could not properly enter summary judgment for defendants based on a record made in support of, and in response to, a motion filed by plaintiff for partial summary judgment. Plaintiff would not have had an opportunity to respond to a defensive motion for summary judgment if it were to be entered on the basis of the existing summary judgment record. However, there is a possibility, if not likelihood, that if defendants had filed a proper motion for summary judgment, and plaintiff had an opportunity to respond to it, and if a decision were to be made on the basis of a summary

judgment record thus created, defendants would be entitled to summary judgment as to all of plaintiff's claims, thereby eliminating the need for further costly pretrial preparation and a potentially lengthy and expensive trial. In the interest of judicial economy, the court has concluded that the court should sua sponte consider that defendants filed a motion for summary judgment, and, after all parties have had an opportunity to make appropriate supplementation of the summary judgment record, make a ruling on such a sua sponte motion.

The grounds of the sua sponte defense motion for summary judgment shall be deemed to be as follows:

(1) Plaintiff is unable to adduce probative evidence in support of all facts plaintiff is required to prove to prevail on the theory of recovery she alleged in Count I of her second amended complaint.

(2) Even if plaintiff were to adduce summary judgment evidence in support of all of the facts she alleged as basis for her Count I claim, as a matter of law such facts would not constitute a cause of action under the FCA.

(3) A reasonable finder of fact would not find on the basis of the summary judgment record existence of all facts plaintiff is required to prove to prevail on the theory of

recovery she alleged in Count I of her second amended complaint.

(4)  Plaintiff is unable to adduce probative evidence in support of all facts plaintiff is required to prove to prevail on the theory of recovery she alleged in Count II of her second amended complaint.

(5)  Even if plaintiff were to adduce summary judgment evidence in support of all of the facts she alleged as basis for her Count II claim, as a matter of law such facts would not constitute a cause of action under the FCA.

(6)  A reasonable finder of fact would not find on the basis of the summary judgment record existence of all facts plaintiff is required to prove to prevail on the theory of recovery she alleged in Count II of her second amended complaint.

(7)  Plaintiff is unable to adduce probative evidence in support of all facts plaintiff is required to prove to prevail on the theory of recovery she alleged in Count III of her second amended complaint.

(8)  Even if plaintiff were to adduce summary judgment evidence in support of all of the facts she alleged as basis for her Count III claim, as a matter of law such facts would not constitute a cause of action under the FCA.

(9)   A reasonable finder of fact would not find on the basis of the summary judgment record existence of all facts plaintiff is required to prove to prevail on the theory of recovery she alleged in Count III of her second amended complaint.

The court is affording each party an opportunity to file at any time before 4:00 p.m. on January 12, 2015, (a) whatever supplementation the party wishes to make to the summary judgment record by way of evidence and (b) any supplemental argument or citation of authority the party wishes the court to consider. The court will treat the existing summary judgment record and all related filings as part of the record for consideration in making decisions related to the sua sponte motion.   Consequently, the parties should not repeat in their supplemental filings presentations already made.

## IV.

## Order

Therefore,

The court ORDERS that plaintiff's motion for partial summary judgment be, and is hereby, denied with the proviso that the court considers established in this case that plaintiff was an employee, contractor, or agent as defined in the FCA and that Kaner PA took adverse action against her when her employment was terminated; and

The court further ORDERS that if any party wishes to supplement the now-existing summary judgment record with additional argument, authorities, or evidence, such party has until 4:00 p.m. on January 12, 2015, within which to do so.

SIGNED December 19, 2014.

JOHN McBRYDE
United States District Judge